IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| H.A. FOLSOM & ASSOCIATES, INC., a Utah corporation, d/b/a Folsom Associates<br><br><div align="center">Plaintiff,</div><br>v.<br><br>MICHAEL CAPEL, an individual, and SERVTECH, INC., a Colorado corporation,<br><br><div align="center">Defendants.</div> | **MEMORANDUM DECISION AND ORDER GRANTING MOTION TO DISMISS AND DENYING PLAINTIFF'S MOTION TO AMEND**<br><br>Case No. 2:16-cv-00160-DN<br><br>District Judge David Nuffer |

This order grants a motion to dismiss and denies a motion to amend, but grants leave to file another motion to amend.

Procedural Background .......................................................................................................... 2
I. Factual Background ........................................................................................................... 5
    A. The Parties .................................................................................................................... 5
    B. The Parties' Past Interactions ...................................................................................... 6
    C. The Parties' Dispute .................................................................................................... 8
II. Discussion ......................................................................................................................... 9
    A. Servtech's Motion to Dismiss for Lack of Personal Jurisdiction ................................ 9
        1. Standard of Review for Motion to Dismiss Under Rule 12(b)(2) .................... 9
        2. Personal Jurisdiction Over a Nonresident Defendant in a Diversity Action ..... 9
        3. "Purposefully Directed" Analysis ................................................................. 11
    B. Folsom's Motion to Amend Is Denied, But Leave Is Granted to File a  Future Motion
        to Amend as to Defendant Capel ................................................................................. 18
        1. Standard of Review for Motion to Amend Under Rule 15(a)(2) .................... 18
        2. Folsom's Amendments as to Servtech Are Futile Because Folsom's Proposed
            Amended Complaint Does Not Establish Personal Jurisdiction Over
            Servtech and Does Not Address Subject-Matter Jurisdiction .................. 19
        3. Folsom Is Granted Leave to Refile a Motion to Amend ................................. 20
Order .................................................................................................................................... 21

## PROCEDURAL BACKGROUND

Plaintiff H.A. Folsom & Associates, Inc. d/b/a Folsom Associates ("Folsom") brought this action against Defendants Servtech, Inc. ("Servtech") and Michael Capel ("Capel") in the Third District Court of the State of Utah on January 14, 2016.[1] Servtech and Capel removed Folsom's action to this court.[2]

In its initial Complaint, Folsom alleges five claims against Capel and four claims against Servtech. Folsom pleads that Capel has committed breach of contract;[3] breach of implied covenant of good faith and fair dealing;[4] intentional interference with prospective economic relations;[5] misappropriation of trade secrets under Utah Code Ann. § 13-24-1;[6] and civil conspiracy.[7] Folsom alleges that Servtech has committed intentional interference with contractual or business relations;[8] intentional interference with prospective economic relations;[9] misappropriation of trade secrets under Utah Code Ann. § 13-24-1;[10] and civil conspiracy.[11] In its prayer for relief, Folsom asks for a declaratory judgment against Capel and permanent injunctive relief against both Capel and Servtech, as well as actual damages, punitive damages,

---

[1] Verified Complaint ("Complaint"), docket no. 2-1, filed February 26, 2016. This is the initial Complaint that Folsom originally filed with the Third District Court of Utah on January 14, 2016.

[2] Notice of Removal of Action to United States Federal District Court Pursuant to 28 U.S.C. §§ 1332, 1441, and 1446 ("Notice of Removal"), docket no. 2, filed February 26, 2016.

[3] Complaint, ¶¶ 49–53.

[4] Id. ¶¶ 54–58.

[5] Id. ¶¶ 69–80.

[6] Id. ¶¶ 94–102.

[7] Id. ¶¶ 103–07.

[8] Id. ¶¶ 59–68.

[9] Id. ¶¶ 69–80.

[10] Id. ¶¶ 94–102.

[11] Id. ¶¶ 103–07.

attorneys' fees and costs, and costs and expenses of collection incurred through the collection of judgment.[12]

Servtech filed a motion to dismiss all of Folsom's claims against it ("Motion to Dismiss").[13] Servtech argues that Folsom's claims should be dismissed for lack of personal jurisdiction.[14] Folsom opposes the Motion to Dismiss ("Opposition Memorandum").[15] Capel has filed an answer to Folsom's initial Complaint[16] and has not joined the Motion to Dismiss.

After filing its Opposition Memorandum, Folsom filed a motion for leave to amend its initial Complaint ("Motion to Amend").[17] In its Motion to Amend, Folsom argues that it must amend its Complaint to include additional allegations and claims against both Servtech and Capel.[18] Folsom's Motion to Amend also includes a proposed amended Complaint as an attached exhibit ("Proposed Amended Complaint").[19] Servtech opposes the Motion to Amend.[20] Capel did not respond to the Motion to Amend.

The Notice of Removal alleged diversity jurisdiction under 28 U.S.C. § 1332.[21] Pursuant to this statute, the parties must have complete diversity.[22] This appears to be satisfied, as Plaintiff

---

[12] *Id.* at 17–18.

[13] Defendant Servtech, Inc.'s Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2) ("Motion to Dismiss"), docket no. 3, filed February 26, 2016.

[14] *Id.* at 2.

[15] Plaintiff's Memorandum in Opposition to Servtech, Inc.'s Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2) ("Opposition Memorandum"), docket no. 14, filed March 25, 2016.

[16] Answer, Defenses, and Jury Demand of Michael Capel, docket no. 10, filed March 4, 2016.

[17] Motion for Leave to File Amended Complaint and Memorandum in Support ("Motion to Amend"), docket no. 21, filed March 28, 2016.

[18] *Id.* at 2.

[19] [Proposed] Amended Complaint, Ex. A to Motion to Amend ("Proposed Amended Complaint"), docket no. 21-1, filed March 28, 2016.

[20] Defendant Servtech, Inc.'s Memorandum in Opposition to Plaintiff's Motion for Leave to File Amended Complaint, docket no. 23, filed April 14, 2016.

[21] 28 U.S.C. § 1332 (2016).

[22] *Id.* § 1332(a)(1).

Folsom is a Utah corporation,[23] Defendant Servtech is a Colorado corporation,[24] and Defendant Capel worked for Folsom in Colorado and is alleged to live in Colorado.[25] The second requirement under § 1332 is that the amount in controversy must exceed $75,000.[26] When this action was removed from the Utah state court by Servtech and Capel, a demand in the amount of $300,000 was entered into the docket because the case had been classified in the Utah court system as a "Tier 3" case, which requires the plaintiff to demand over $300,000 in damages.[27] And the Notice of Removal recites "the amount in controversy exceeds $75,000 . . . ."[28] However, Plaintiff Folsom has not specifically alleged any amount in controversy in either its initial Complaint or Proposed Amended Complaint. This issue is considered in the analysis of Folsom's Motion to Amend.

As discussed below, Utah does not have specific personal jurisdiction over Servtech. Therefore, Servtech's Motion to Dismiss is GRANTED. Furthermore, Folsom's Proposed Amended Complaint does not establish personal jurisdiction over Servtech and fails to address proper subject-matter jurisdiction. Therefore, Folsom's Motion to Amend is DENIED as to Servtech. Because the complaint needs wholesale amendment to reflect dismissal of Servtech, the motion is DENIED as to Capel, though leave is given to file another motion to amend.

---

[23] Complaint ¶ 7.

[24] *Id.* ¶ 3.

[25] *Id.* ¶ 2.

[26] 28 U.S.C. § 1332(a).

[27] Notice of Removal ¶ 9.

[28] *Id.* at 4.

# I.  FACTUAL BACKGROUND[29]

## A.  The Parties

Plaintiff Folsom, a Utah corporation, is a supplier of industrial pump equipment.[30] Folsom's principal place of business is located in Salt Lake City, Utah.[31] Folsom also operates a smaller facility in Denver, Colorado.[32]

Michael Capel began working for Folsom as a sales representative in 2001.[33] Capel also acted as a branch manager at Folsom's Colorado facility,[34] reporting to Folsom's office in Salt Lake City, Utah.[35] Capel's employment agreement with Folsom included restrictive covenants regarding non-competition,[36] non-disclosure,[37] and confidentiality.[38] Capel left his job with Folsom on December 15, 2015.[39] Capel was later hired by Servtech in Colorado in January 2016,[40] and he currently works for Servtech at its Colorado office.[41]

---

[29] The allegations provided in the section entitled "Factual Background" derive from the Complaint and the parties' briefing on the Motion to Dismiss. For purposes of this memorandum decision and order, the plaintiff's allegations are assumed to be true.

[30] Complaint ¶ 7.

[31] *Id.* ¶ 1.

[32] *Id.* ¶ 2; Motion to Dismiss at 3, ¶ 1; Opposition Memorandum at ii–iii, ¶ 1.

[33] Complaint ¶ 8.

[34] *Id.* ¶ 9.

[35] *Id.* ¶ 2.

[36] *Id.* ¶¶ 14–17; *id.* at Ex. A, ¶ 10. Upon the termination of Capel's employment with Folsom, the non-competition covenants of Capel's employment agreement were to be effective for three years within Folsom's trade area. *Id.* Folsom's trade area includes the state of Utah; the state of Idaho, except counties north of Idaho County; the state of Wyoming; that part of Nevada included in the counties of Elko, Eureka, White Pine, Lincoln, Nye, Lander, Humboldt, Pershing, Churchill, Mineral, and Esmeralda; and the state of Colorado. *Id.*

[37] *Id.* ¶¶ 18–19; *id.* at Ex. A, ¶ 7.

[38] *Id.* ¶¶ 21–22; *id.* at Ex. B.

[39] *Id.* ¶¶ 35–36.

[40] *Id.* ¶ 37; Motion to Dismiss at 2.

[41] Motion to Dismiss at 2, 5, ¶ 7.

Defendant Servtech, a Colorado corporation,[42] is primarily in the business of building

Lease Acquisition Custody Transfer ("LACT") skids and buildings, which typically require

multiple industrial pumps.[43] Servtech has offices in Colorado and Wyoming.[44] Servtech does not

have any offices, domiciled employees, sales representatives, agents, bank accounts, tangible

personal property, or real property in the state of Utah.[45] Servtech does not currently service any

customers based in Utah[46] and has not performed any business in Utah during the last two

years.[47]

### B.  The Parties' Past Interactions

Folsom and Servtech have allegedly engaged in various business transactions and

relationships over the last five years.[48] The primary business arrangement between Folsom and

Servtech consisted of a referral agreement,[49] which has been described as an informal and verbal

arrangement.[50] Under the referral agreement, Capel (working as a Folsom employee in

Colorado) would offer to sell Servtech's products and services (i.e. LACT skids and other related

services) alongside Folsom's offerings to Folsom's customers and contacts.[51] Folsom was aware

of this arrangement and supported it due to the potential economic benefits that Folsom could

---

[42] Complaint ¶ 3.

[43] *Id.* ¶¶ 23–28.

[44] *Id.* ¶ 3.

[45] Motion to Dismiss at 3–4, ¶¶ 2–3.

[46] *Id.* at 5, ¶ 7.

[47] *Id.* at 3, ¶ 2.

[48] Opposition Memorandum at iv, ¶ 4; Declaration of Justin Van-De-Velde ¶ 20, docket no. 20, filed March 25, 2016.

[49] Complaint ¶ 30; Motion to Dismiss at 5, ¶¶ 5–6.

[50] Reply in Support of Defendant Servtech Inc.'s Motion to Dismiss All Claims Pursuant to Fed. R. Civ. P. 12 (b)(2) ("Reply Memorandum") at 3, docket no. 22, filed April 11, 2016.

[51] Complaint ¶ 30; Motion to Dismiss at 5, ¶ 6.

realize whenever Servtech was hired to build a LACT skid.[52] Pursuant to this referral agreement, Servtech paid Folsom a percentage of the total contract price that Servtech received from Capel's referral.[53]

A formal contract has never existed between Folsom and Servtech,[54] though Servtech has purchased various pump products through Folsom's Colorado facility.[55] Servtech mailed payments for purchased products to Folsom's headquarters in Utah.[56]

According to Folsom, other alleged past interactions in Utah between Folsom and Servtech include both companies working together on a project for Rio Tinto at Utah's Kennecott Copper Mine around 2012 to 2013;[57] representatives from both companies attending a pre-bid meeting for the same Kennecott project;[58] and a 2013 meeting between representatives of both companies to discuss a particular line of products,[59] which has been disputed by Servtech.[60] Folsom also alleges that Capel used a marketing brochure while working for Folsom, which indicated that Folsom and Servtech had partnered together as distributors of pumping and electrical control solutions that served the intermountain western United States, including Utah.[61] Servtech denies knowing about this brochure or authorizing its use.[62]

---

[52] Complaint ¶¶ 31–32.

[53] Id. ¶¶ 33–34.

[54] Motion to Dismiss at 4, ¶ 4; Decl. of Bob Pritchard in Support of Motion to Dismiss Pursuant to Federal R. Civ. P. 12(b)(2) ("Pritchard Decl.") ¶ 4, docket no. 3-1, filed February 26, 2016.

[55] Motion to Dismiss at 3, ¶ 1; 4–5, ¶¶ 4–6; Opposition Memorandum at iv, ¶ 4.

[56] Opposition Memorandum at vii, ¶ 10, ix, ¶ 16, 3.

[57] Id. at vi–vii, ¶ 9.

[58] Id. at vii–viii, ¶ 12.

[59] Id. at viii, ¶ 14.

[60] Reply Memorandum at 5–6.

[61] Opposition Memorandum at iv, ¶ 4, viii–ix, ¶ 15.

[62] Reply Memorandum at 7–8; Second Declaration of Bob Pritchard in Support of Motion for Dismissal of All Claims Pursuant to Fed. R. Civ. P. 12(b)(2) ¶ 5, docket no. 22-4, filed April 11, 2016.

## C.  The Parties' Dispute

Folsom's dispute with Servtech and Capel arises out of Servtech's hiring of Capel. Folsom asserts that Capel, after terminating his employment with Folsom, took customer phone numbers[63] and other items from Folsom, including, but not limited to, lists of vendors, suppliers, customer lists, addresses, phone numbers, mailing lists of prospects, marketing plans, pricing, and estimates.[64] When Folsom learned that Capel was working for Servtech, counsel for Folsom sent notice to both Servtech and Capel regarding the restrictive covenants of Capel's employment agreement with Folsom.[65] Folsom alleges that both Servtech and Capel ignored this notice by proceeding to engage in tortious activity against Folsom.[66] One of Folsom's allegations is that Capel, as a current employee of Servtech, has contacted one of Folsom's major pump suppliers to directly purchase pumps for Servtech to resell, rather than purchasing pumps from Folsom.[67] Folsom also alleges that Capel is now selling the same products for Servtech that he previously sold for Folsom.[68] According to Folsom, Servtech intentionally caused or induced Capel to take these alleged actions and to deprive Folsom of business.[69] In addition, Servtech and Capel have allegedly interfered with a number of projects between Folsom and Servtech that Folsom had been developing through Capel.[70] Folsom alleges that these actions have resulted in

---

[63] Complaint ¶¶ 41–48.

[64] *Id.* ¶ 48.

[65] Opposition Memorandum at 2; Decl. of Judson D. Stelter ("Stelter Decl."), docket no. 18, filed March 25, 2016.

[66] Opposition Memorandum at 2.

[67] Complaint ¶¶ 38–39.

[68] *Id.*

[69] *Id.* ¶¶ 63, 74, 98–100.

[70] Opposition Memorandum at v, ¶ 6.

direct competition between Servtech and Folsom and have cut Folsom out of significant revenue.[71]

## II.  DISCUSSION

### A.  Servtech's Motion to Dismiss for Lack of Personal Jurisdiction

### 1.  Standard of Review for Motion to Dismiss Under Rule 12(b)(2)

Servtech moves to dismiss this case due to lack of personal jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure.[72] "The purpose of a motion to dismiss under Rule 12(b)(2) is to determine whether the Court has personal jurisdiction."[73] "[P]laintiffs bear the burden of establishing personal jurisdiction,"[74] but "plaintiffs need only make a *prima facie* showing of personal jurisdiction."[75] "The Court will accept the well-pleaded allegations of the complaint as true to determine whether plaintiff has made a prima facie showing that personal jurisdiction exists."[76] "The plaintiff . . . may also make this prima facie showing by putting forth evidence that, if proven to be true, would support jurisdiction over the defendant."[77] "[A]ny factual disputes in the parties' affidavits must be resolved in plaintiffs' favor."[78]

### 2.  Personal Jurisdiction Over a Nonresident Defendant in a Diversity Action

Determining whether personal jurisdiction may be properly asserted over a defendant requires two inquiries. The first inquiry is "whether any applicable statute authorizes the service

---

[71] Complaint ¶ 39; Opposition Memorandum at v, ¶ 6.

[72] Fed. R. Civ. P. 12(b)(2).

[73] *Aurora Bank FSB v. Network Mortg. Servs., Inc.*, No. 13-cv-00047-PAB-KLM, 2014 WL 1034588, at *2 (D. Colo. Mar. 17, 2014).

[74] *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1069–70 (10th Cir. 2008).

[75] *Id.* at 1070.

[76] *Aurora Bank FSB*, 2014 WL 1034588, at *2.

[77] *Id.*

[78] *Dudnikov*, 514 F.3d at 1070.

of process on defendants."[79] The second inquiry is "whether the exercise of such statutory

jurisdiction comports with constitutional due process demands."[80]

Rule 4(k)(1)(A) of the Federal Rules of Civil Procedure "commands the district court . . .

to apply the law of the state in which the district court sits."[81] The applicable Utah nonresident

jurisdiction statute, Utah Code Ann. § 78B–3–205, states that claims can be brought for "the

causing of any injury within this state whether tortious or by breach of warranty."[82] Because

"Utah's long-arm statute 'authorizes jurisdiction to the full extent of the federal constitution,'"[83]

a court "'need not conduct a statutory analysis apart from the due process analysis.'"[84] Thus, the

second inquiry also resolves the second inquiry.

The second inquiry is whether personal jurisdiction over a defendant comports with due

process. For due process to be satisfied, a defendant "must have 'minimum contacts' with the

forum state."[85] Also, the defendant's minimum contacts with the forum state must be sufficient

enough "such that having to defend a lawsuit there would not 'offend traditional notions of fair

play and substantial justice.'"[86]

The minimum contacts requirement "'may be satisfied by showing general or specific

jurisdiction.'"[87] General jurisdiction allows a forum state "to resolve any dispute involving that

---

[79] *Id.*

[80] *Id.*

[81] *Id.*; Fed. R. Civ. P. 4(k)(1)(A).

[82] Utah Code § 78B–3–205(3) (2016).

[83] *ClearOne Commc'ns, Inc. v. Bowers*, 643 F.3d 735, 763 (10th Cir. 2011) (citations omitted); Utah Code § 78B–3–201(3) (2016).

[84] *ClearOne Commc'ns, Inc.*, 643 F.3d at 763 (citations omitted).

[85] *Dudnikov*, 514 F.3d at 1070 (citations omitted).

[86] *Id.* (citations omitted).

[87] *ClearOne Commc'ns, Inc.*, 643 F.3d at 763 (citations omitted).

party, not just the dispute at issue."[88] Servtech would only be subject to general jurisdiction in Utah if its "affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State,"[89] with the paradigmatic examples being "the place of incorporation and principal place of business."[90] Because Folsom does not challenge Servtech's argument that Servtech is not subject to personal jurisdiction in Utah under a theory of general jurisdiction, general jurisdiction analysis is not necessary.

Specific jurisdiction grants a court jurisdiction over a party only with respect to a specific dispute.[91] In the context of alleged torts or tort-based lawsuits, such as Folsom's claims against Servtech, specific jurisdiction is determined by considering two elements. First, an "out-of-state defendant must have 'purposefully directed' its activities at residents of the forum state."[92] Second, "the plaintiff's injuries must 'arise out of' defendant's forum-related activities."[93] Many courts often reference a third element of "whether exercising jurisdiction would offend traditional notions of fair play and substantial justice,"[94] which is also the second part of the initial due process analysis.

### 3. "Purposefully Directed" Analysis

The test to determine whether a defendant's activities have been "purposefully directed" at residents of the forum state is derived from the United States Supreme Court case of *Calder v. Jones*.[95] The three-prong test requires "the presence of (a) an intentional action . . . that was (b)

---

[88] *Newsome v. Gallacher*, 722 F.3d 1257, 1264 (10th Cir. 2013).

[89] *Daimler AG v. Bauman*, 134 S.Ct. 746, 761 (2014) (citations omitted).

[90] *Id.* at 760.

[91] *Newsome*, 722 F.3d at 1264.

[92] *Dudnikov*, 514 F.3d at 1071 (citations omitted).

[93] *Id.* (citations omitted).

[94] *Newsome*, 722 F.3d at 1264.

[95] *Dudnikov*, 514 F.3d at 1072; *see Calder v. Jones*, 465 U.S. 783 (1984).

expressly aimed at the forum state . . . with (c) knowledge that the brunt of the injury would be felt in the forum state."[96]

While courts have used this "purposefully directed" test recently in both the Tenth Circuit[97] and the state of Utah,[98] it is important to note the limitations on the test that were described in *Walden v. Fiore*, which is a fairly recent Supreme Court case that analyzed personal jurisdiction in the context of alleged intentional torts.[99] The Court in *Walden* issued a reminder that the minimum contacts inquiry in the context of specific jurisdiction properly "focuses on the 'relationship among the defendant, the forum, and the litigation.'"[100] Another point of emphasis from *Walden* is that, "[f]or a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State."[101] Regarding the relationship between the defendant's suit-related conduct and the forum state, the Court stated that "the relationship must arise out of contacts that the 'defendant *himself*' creates with the forum state . . ." and that the "'minimum contacts' analysis looks to the defendant's contacts with the forum state itself, not the defendant's contacts with persons who reside there."[102] Finally, the Court noted that "a defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction"[103] and that "mere injury to a forum resident is not a sufficient connection to the forum."[104] Instead, "[t]he proper question is not

---

[96] *Dudnikov*, 514 F.3d at 1072.

[97] *Anzures v. Flagship Rest. Grp.*, No. 15-1332, 2016 WL 1612789, at *3 (10th Cir. Apr. 22, 2016).

[98] *ClearOne, Inc. v. Revolabs, Inc.*, No. 20141184, 2016 WL 1295114, at *7–8 (Utah Apr. 1, 2016).

[99] *Walden v. Fiore*, 134 S.Ct. 1115 (2014).

[100] *Id.* at 1121 (citations omitted).

[101] *Id.*

[102] *Id.* at 1122 (citations omitted).

[103] *Id.* at 1123.

[104] *Id.* at 1125.

where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way."[105] Overall, applying its doctrine to the facts in the *Walden* case, the Court held that because the "[defendant's] relevant conduct occurred entirely in [a different state than the plaintiffs had experienced their injury], . . . the mere fact that [the defendant's] conduct affected plaintiffs with connections to the forum State does not suffice to authorize jurisdiction."[106]

### a. *Servtech's Hiring of Capel and Alleged Interference with Capel's Contract and Folsom's Customers Were Intentional Actions*

The first prong of the "purposefully directed" test requires the defendant to have engaged in "an intentional action."[107] It is undisputed that Servtech hired Capel in January 2016, in Colorado.[108] No argument has been presented that Servtech's actions in hiring Capel were unintentional. It is also undisputed that Servtech and Capel were provided with notice of Capel's previous employment and confidentiality agreements, which included the restrictive covenants of Capel's contract that Folsom alleges Servtech to have interfered with.[109] Folsom alleges that Capel contacted one of Folsom's suppliers and is engaging in direct competition with Folsom by selling the same products for Servtech, both of which Servtech is alleged to have been intentionally involved with.[110] No other specific information about these allegations has been set forth by Folsom, but these general allegations have not been disputed by Servtech.

---

[105] *Id.*

[106] *Id.* at 1126.

[107] *Dudnikov*, 514 F.3d at 1072.

[108] Complaint ¶ 37; Motion to Dismiss at 2.

[109] Opposition Memorandum at 2; Stetler Decl..

[110] Complaint ¶¶ 38–39.

Because Servtech's intentional action of hiring Capel and Folsom's allegations that Servtech has engaged in intentional interference with Folsom's business contacts are not in dispute, the intentional action prong of the test has been met.

### b. *Servtech's Intentional Actions Were Not Expressly Aimed at Utah*

The second prong of the "purposefully directed" test requires the defendant's intentional action to have been "expressly aimed at the forum state."[111] The forum state must "have been the 'focal point' of the tort."[112] Pursuant to *Walden*, the focus of this analysis must be on "the defendant's suit-related conduct" and the resulting relationship between the defendant and the forum state, which is comprised "of contacts that the 'defendant *himself*' creates with the forum state" and "the defendant's contacts with the forum state itself."[113]

The suit-related conduct, or intentional action, at issue revolves around Servtech's hiring of Capel.[114] This action led to Servtech's alleged interference with the non-competition and non-disclosure covenants of Capel's employment agreement with Folsom.[115] Capel, who had previously worked for Folsom in Colorado,[116] was later hired by Servtech in Colorado.[117] Folsom has not alleged that any activity related to Servtech's action in hiring Capel occurred in Utah.

---

[111] *Dudnikov*, 514 F.3d at 1072.

[112] *Newsome*, 722 F.3d at 1268 (citations omitted).

[113] *Walden*, 134 S.Ct. at 1122.

[114] Complaint ¶ 37; Motion to Dismiss at 2.

[115] Opposition Memorandum at 2; Complaint, ¶¶ 14–17, 18–19, 21–22; Empl. Agreement, Ex. A to Complaint ¶¶ 7, 10, docket no. 2-1, filed Feb. 26, 2016; Confidential and Proprietary Agreement, Ex. B to Complaint, docket no. 2-1, filed Feb. 26, 2016.

[116] Complaint ¶¶ 8–9.

[117] Motion to Dismiss at 2.

A case that has some similarities to the present facts is *All American Security Corporation v. Borealis Mining Company, LLC*.[118] In *All American Security*, the plaintiff, a Utah security company, entered into a contract with the defendant, a Nevada mining company, to provide security services at the defendant's Nevada mine.[119] The defendant chose to terminate the agreement early and allegedly tried to entice the plaintiff's employees to work for the defendant.[120] Subsequently, the plaintiff sued the defendant in Utah for breach of contract and tortious interference with the plaintiff's business relationships and employee contracts.[121] The defendant moved to dismiss the case based on lack of personal jurisdiction.[122]

To determine whether personal jurisdiction existed over the defendant, the court analyzed both the contract claims and tort claims. While contract claims are subject to a slightly different specific jurisdiction analysis than torts[123] and a contract did not ever exist between Folsom and Servtech,[124] it is notable that the court in *All American Security* found that the contract between the parties was insufficient to satisfy the minimum contacts inquiry.[125] Regarding the alleged tortious conduct, the court utilized the "purposefully directed" test,[126] finding that personal jurisdiction over the defendant was not proper because the defendant had not "expressly aimed" its conduct at Utah.[127] The court decided that, despite the past relationship and contract between the parties, "there [was] no evidence to suggest [that the defendant's] alleged wrongful conduct

---

[118] *All Am. Sec. Corp. v. Borealis Mining Co., LLC*, No. 2:15-cv-00582, 2015 WL 9581761 (D. Utah Dec. 30, 2015).

[119] *Id.* at *1.

[120] *Id.*

[121] *Id.*

[122] *Id.*

[123] *See Dudnikov*, 514 F.3d at 1071.

[124] Motion to Dismiss at 4, ¶ 4; Pritchard Decl. ¶ 4.

[125] *All Am. Sec. Corp.*, 2015 WL 9581761 at *3.

[126] *Id.* at *3–5.

[127] *Id.*

had any connection to Utah."[128] The defendant's "alleged 'tortious acts' involved disputes about business relationships located in Nevada," rather than business relationships in the forum state of Utah,[129] because the plaintiff's employees were performing services for the plaintiff in Nevada under "'Nevada centered agreements.'"[130]

The situation in *All American Security* is similar to Servtech's alleged interference with Capel's contract. Although Capel was not a Folsom employee when Servtech hired him,[131] it is alleged that, during the time that Capel was a Folsom employee, Capel worked in Colorado as a sales representative and branch manager at Folsom's Colorado facility.[132] Servtech's alleged tortious actions, including Servtech's hiring of Capel and intentional interference with the restrictive covenants of Capel's previous employment contract with Folsom, involve disputes about a business relationship that was located in Colorado. Thus, Servtech's alleged tortious actions were not connected to Utah.

Furthermore, Folsom has not set forth any specific factual allegations to suggest that Servtech's alleged tortious actions toward Folsom's customers or potential customers are connected with Utah in any way. Folsom has not specifically listed any customers that Servtech has allegedly interfered with.[133]

Folsom asserts that it has suffered injuries in Utah through Servtech's alleged tortious actions because Utah is Folsom's principal place of business.[134] However, "[t]he proper question is not where the plaintiff experienced a particular injury or effect" because, "[r]egardless of

---

[128] *Id.* at *4.

[129] *Id.*

[130] *Id.*

[131] Complaint ¶¶ 35–37; Motion to Dismiss at 2.

[132] Complaint ¶¶ 8–9.

[133] *See id.* ¶¶ 38–39.

[134] *Id.* ¶ 1; Opposition Memorandum at ii.

where a plaintiff lives or works, an injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum State."[135] Focusing on the allegation that Utah is the site of Folsom's injury is improper because Servtech's alleged suit-related conduct occurred in Colorado and concerned business relationships in Colorado, as discussed above.

Because Folsom fails to allege that Servtech's tortious conduct actually connected Servtech with the state of Utah through contacts that Servtech made with Utah, Servtech's conduct cannot be found to have been "expressly aimed" at Utah.

### c. Servtech's Knowledge that the Brunt of Folsom's Injury Would Be Felt in Utah is Not Sufficient to Establish Specific Jurisdiction

The third prong of the "purposefully directed" test requires the defendant to have had "knowledge that the brunt of the injury would be felt in the forum state."[136] Courts have used the terms "foresight" and "knowledge" interchangeably when assessing this prong.[137]

Folsom has set forth many allegations regarding both the historical business relationship between Servtech and Folsom as well as Servtech's past connections with Utah.[138] While the companies did business together in the past, Folsom and Servtech engage in different types of trade[139] and never entered into a formal contract with each other.[140]

Although Folsom's allegations of past interactions between the companies have little to do with the alleged tortious conduct at issue, the past interactions suggest that Servtech knew that Folsom was based in Utah. This knowledge would allow Servtech to foresee or know that any

---

[135] *Walden*, 134 S.Ct. at 1125.

[136] *Dudnikov*, 514 F.3d at 1072.

[137] *Id.* at 1077–78 (". . . if defendants acted with more than foresight (or knowledge) that effects would be felt in Colorado").

[138] Opposition Memorandum at i–ix.

[139] Complaint ¶¶ 7, 23–28.

[140] Motion to Dismiss at 4, ¶ 4.

injury to Folsom would be felt in Utah. However, "the mere foreseeability of causing an injury in the forum state is, standing alone, insufficient to warrant" an assertion of personal jurisdiction over a defendant.[141] Even though Servtech may have foreseen or known that its alleged tortious actions would result in Folsom sustaining injuries in Utah, this knowledge cannot serve to confer personal jurisdiction because Servtech's suit-related conduct was not "expressly aimed" at Utah.

Since the "expressly aimed" prong of the "purposefully directed" test has not been satisfied, personal jurisdiction over Servtech is not proper. Consequently, a discussion of the remaining parts of the due process analysis is not necessary. Accordingly, Servtech's Motion to Dismiss is granted.

### B.  Folsom's Motion to Amend Is Denied, But Leave Is Granted to File a Future Motion to Amend as to Defendant Capel

The analysis of Servtech's Motion to Dismiss considered additional allegations of the Proposed Amended Complaint that Folsom had noted in its Opposition Memorandum, which pertained to the relationship between Servtech and Folsom and Servtech's connections with Utah. These additional allegations will also be considered in deciding Folsom's Motion to Amend.

### 1.  Standard of Review for Motion to Amend Under Rule 15(a)(2)

Because more than twenty-one days have passed since Folsom's initial Complaint was served, Folsom seeks leave to amend its Complaint pursuant to Rule 15(a)(2) of the Federal Rules of Civil Procedure.[142] When a party seeks to amend its pleading under Rule 15(a)(2), "[t]he court should freely give leave when justice so requires."[143] However, "'the district court may deny leave to amend where amendment would be futile.'"[144] In the specific context of

---

[141] *Dudnikov*, 514 F.3d at 1077.

[142] Fed. R. Civ. P. 15(a)(2).

[143] *Id.*

[144] *Bradley v. Val-Mejias*, 379 F.3d 892, 901 (10th Cir. 2004) (citations omitted).

amending a complaint, "'[a] proposed amendment is futile if the complaint, as amended, would be subject to dismissal.'"[145]

## 2.  Folsom's Amendments as to Servtech Are Futile Because Folsom's Proposed Amended Complaint Does Not Establish Personal Jurisdiction Over Servtech and Does Not Address Subject-Matter Jurisdiction

Changes Folsom's Proposed Amended Complaint, in comparison to Folsom's initial Complaint, include a new section describing Servtech's connections with Utah;[146] one new cause of action against Servtech;[147] and two new causes of action against Capel.[148] As discussed above in the personal jurisdiction analysis, the additional factual allegations in Folsom's Proposed Amended Complaint regarding Servtech's history with Folsom and connections with Utah were considered and found not to support personal jurisdiction over Servtech. Since Servtech's Motion to Dismiss has been granted, allowing Folsom to amend its Complaint to include these new allegations about Servtech would be futile. And any amended complaint should not state any claims against Servtech since this court has no jurisdiction over Servtech.

Folsom's Proposed Amended Complaint also fails to support or establish subject-matter jurisdiction under a theory of complete diversity pursuant to 28 U.S.C. § 1332.[149] The section of Folsom's Proposed Amended Complaint that is devoted to "Jurisdiction and Venue"[150] is identical to the "Jurisdiction and Venue" section in Folsom's initial Complaint that was filed in the Utah Third District Court.[151] Because of this, the "Jurisdiction and Venue" section only contains references to Utah jurisdiction statutes without any reference to the federal statutes that

---

[145] *Id.* (citations omitted).

[146] Proposed Amended Complaint ¶¶ 51–72.

[147] *Id.* ¶¶ 141–47.

[148] *Id.* ¶¶ 133–47.

[149] 28 U.S.C. § 1332.

[150] Proposed Amended Complaint ¶¶ 4–5.

[151] Complaint ¶¶ 4–5.

control jurisdiction in federal courts. Now that Folsom's action is in federal court, Folsom's

pleading should demonstrate that subject-matter jurisdiction is proper under a theory of diversity

jurisdiction, which requires complete diversity of the parties and an amount in controversy of

over $75,000.[152] The parties appear to be completely diverse, but a specific amount in

controversy is not present anywhere in Folsom's Proposed Amended Complaint, including the

"Prayer for Relief" section.[153]

Because the amendments in Folsom's Proposed Amended Complaint do not establish

personal jurisdiction over Servtech and do not address subject-matter jurisdiction, Folsom's

Motion to Amend is denied as to Servtech.

### 3.  Folsom Is Granted Leave to Refile a Motion to Amend

However, Servtech's motion to amend sought to make changes in allegations against

Capel. Because "courts should freely give leave" to parties who seek to amend their pleadings,[154]

Folsom is granted leave to refile a motion to amend its Complaint within 21 days. The future

motion to amend must attach a new proposed amended Complaint that alleges subject-matter

jurisdiction; not include claims against Servtech; but may include previous and new allegations

against Capel.

---

[152] 28 U.S.C. § 1332.

[153] Proposed Amended Complaint at 20–21.

[154] Fed. R. Civ. P. 15(a)(2).

## ORDER

IT IS HEREBY ORDERED that Defendant Servtech's Motion to Dismiss[155] is

GRANTED. Defendant Servtech is dismissed from this action.

IT IS FURTHER ORDERED that Plaintiff Folsom's Motion to Amend[156] is DENIED.

Plaintiff Folsom is GRANTED leave to file a motion to amend within 21 days.


Dated August 19, 2016.

BY THE COURT:

_____
David Nuffer
United States District Judge

---

[155] Defendant Servtech, Inc.'s Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2) ("Motion to Dismiss"), docket no. 3, filed February 26, 2016.

[156] Motion for Leave to File Amended Complaint and Memorandum in Support ("Motion to Amend"), docket no. 21, filed March 28, 2016.